Andrias, J.,
concurs in part and dissents in part in a memorandum as follows: I agree with the majority and the dissent that defendant MatlinPatterson Global Advisers, LLC (MP) exercised a sufficient degree of control over its subsidiary Varig Logistica S.A. (VarigLog) to trigger a duty to preserve VarigLog’s electronically stored information (ESI), and that MP’s failure to impose a litigation hold was not, in and of itself, gross negligence per se.
I also agree with the majority that upon a contextual assessment of all pertinent facts (see Chin v Port Auth. of N.Y. & N.J., 685 F3d 135, 162 [2d Cir 2012], cert denied 569 US —, 133 S Ct 1724 [2013]), MP’s failure to discharge its duty did not rise to the level of gross negligence. However, because a court may, in its discretion, impose a spoliation sanction for the negligent destruction of evidence, I disagree with the majority’s conclusion that no sanction is warranted, and would remand for a determination as to the extent to which plaintiffs have been prejudiced by the loss of the evidence, and the sanction, if any, that should be imposed.
In Zubulake v UBS Warburg LLC (220 FRD 212, 218 [SD NY 2003]), the federal district court held that “[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a ‘litigation hold’ to ensure the preservation of relevant documents.” In VOOM HD Holdings LLC v EchoStar Satellite L.L.C. (93 AD3d 33, 45 [1st Dept 2012]), we adopted the Zubulake standard for preservation and held that “[a] party seeking sanctions based *437 on the spoliation of evidence must demonstrate: (1) that the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a ‘culpable state of mind’; and finally, (3) that the destroyed evidence was relevant to the party’s claim or defense such that the trier of fact could find that the evidence would support that claim or defense.”
The requisite culpable state of mind can be demonstrated through intentional or willful conduct, gross negligence, or ordinary negligence (id.), and the court has “broad discretion in determining what, if any, sanction should be imposed for spoliation of evidence ...[,] even if the destruction occurred through negligence rather than wilfulness” (Samaroo v Bogopa Serv. Corp., 106 AD3d 713, 714 [2d Dept 2013]).
In determining the appropriate sanction for spoliation, “the court must consider the degree to which the contumacious conduct or destruction of evidence prejudiced the other party” (Melcher v Apollo Med. Fund Mgt. L.L.C., 105 AD3d 15, 23-24 [1st Dept 2013]). As the Court of Appeals stated in Ortega v City of New York (9 NY3d 69, 76 [2007]): “New York courts therefore possess broad discretion to provide proportionate relief to the party deprived of the lost evidence, such as precluding proof favorable to the spoliator to restore balance to the litigation, requiring the spoliator to pay costs to the injured party associated with the development of replacement evidence, or employing an adverse inference instruction at the trial of the action. Where appropriate, a court can impose the ultimate sanction of dismissing the action or striking responsive pleadings, thereby rendering a judgment by default against the offending party” (citations omitted).
The majority believes that no sanction is warranted. However, the motion court stated that the lost documents, which included internal emails, communications with a Brazilian court, and bank records, “clearly would be very relevant and important for the plaintiff[s] to prove their case,” i.e. that MP controlled and dominated VarigLog, that it used its domination to harm plaintiffs, and that MP’s Brazilian court defense is not credible. Even if the destruction of the records was the result of ordinary negligence, a hearing should be held to assess the extent of the prejudice suffered by plaintiffs thereby, and for a determination as to the sanction, if any, that would be appropriate. This includes an adverse inference charge (PJI3d 1:77), which may be an appropriate sanction for the negligent spoliation of evidence (see Marotta v Hoy, 55 AD3d 1194 [3d Dept 2008]), even if the evidence destroyed did “not constitute the sole source of *438 the information and the sole means by which plaintiff c[ould] establish his case” (Alleva v United Parcel Serv., Inc., 112 AD3d 543, 544 [1st Dept 2013]; Melendez v City of New York, 2 AD3d 170 [1st Dept 2003]).
In this regard, I disagree with the majority that an adverse instruction would be tantamount to the grant of summary judgment in favor of plaintiff on its alter ego and conversion claims. An adverse inference charge is permissive, allowing, but not requiring the jury to draw negative inferences from the missing evidence, and is not equivalent to a grant of summary judgment.
Richter, J., dissents in a memorandum as follows: I agree with the majority’s finding that plaintiffs have demonstrated that defendant MatlinPatterson Global Advisers, LLC and its affiliates (MP Global) exercised enough control over Varig Logística S.A. (VarigLog) to trigger MP Global’s obligation to see that VarigLog took reasonable steps to preserve potentially relevant documents. I part company with the majority’s holding as to the extent of MP Global’s negligence. I conclude that MP Global’s failure to take any meaningful steps to preserve evidence constitutes gross negligence and therefore that the order imposing the sanction of an adverse inference should be affirmed.
The imposition of spoliation sanctions is within the discretion of the motion court and should not be disturbed on appeal absent evidence of an abuse of discretion (see Fish & Richardson, P.C. v Schindler, 75 AD3d 219, 220 [1st Dept 2010]; Talansky v Schulman, 2 AD3d 355, 361-362 [1st Dept 2003]). Courts “possess broad discretion to provide proportionate relief to the party deprived of the lost evidence” (Ortega v City of New York, 9 NY3d 69, 76 [2007]).[1] As observed by the majority, when determining if a sanction is proper, the court must determine if the party seeking the sanction established: “(1) that the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and finally, (3) that the destroyed evidence was relevant to the party’s claim” (VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33, 45 [1st Dept 2012] [internal quotation marks omitted]). However, the party seeking the sanction need not establish relevance when the destruction of evidence arises from conduct above mere negligence *439 (see id. at 45-46; Ahroner v Israel Discount Bank of N.Y., 79 AD3d 481, 482 [1st Dept 2010]). When the destruction is the result of gross negligence, relevance is presumed (VOOM, 93 AD3d at 45-46; Ahroner, 79 AD3d at 482).
Here, the motion court acted within its discretion in determining that MP Global’s conduct constituted gross negligence. MP Global was in control of VarigLog when this action commenced in October 2008, triggering its obligation to preserve evidence (see VOOM, 93 AD3d at 45). Despite the fact that it had control, MP Global took no action to ensure that VarigLog preserved potentially relevant evidence. I do not contend, as the majority suggests, that MP Global’s failure to institute a litigation hold at VarigLog constitutes gross negligence per se. Rather, my conclusion is based on MP Global’s failure to take even the most rudimentary steps to ensure that potentially relevant evidence was preserved, including, but not limited to, instructing that a litigation hold be put in place.
Although VarigLog experienced two separate computer crashes that affected its hardware and software in 2009, at the time the crashes occurred VarigLog had no policy in place for email retention. Furthermore, there is no evidence that any efforts were made to create copies of the information that now is at issue in case the primary backup data was destroyed. Indeed, the first crash caused the backup tape to become corrupted, and the tape could not be recovered. The second crash, which occurred about a month later, caused damage to VarigLog’s backup server, which also could not be restored. Further, the disks and applications involved in the crashes were not retained. Perhaps most notable is the fact that after the first crash occurred, MP Global took no additional action to ensure the preservation of data going forward.
Testimony by employees of VarigLog and MP Global provides further evidence that MP Global did not take the necessary steps to preserve evidence. During her deposition, VarigLog’s CEO, Chan Lup Wai Ohira, stated that as far as she knew or could remember, MP Global never made copies of any of VarigLog’s computer hard drives. When she was asked if anyone told her at the time she became CEO in November 2008, a month after this action commenced, that she “needed to take special precautions to preserve or retain records,” Ohira said no. Additionally, when Santiago Juan Born, a former employee of MP Global and manager of VarigLog, was asked if he ever saw an “instruction from anyone to [VarigLog] telling them to retain their records for the purposes of litigation,” his answer also was no.
*440 The majority’s focus on the computer crashes does not take any of this into consideration. The crashes would have been irrelevant had MP Global taken any steps to ensure that the evidence was being preserved, such as printing hard copies of the material or taking images of the hard drive. However, MP Global took no such precautions. MP Global does not contend it was unaware of the role electronic evidence would play in litigation. Indeed, MP Global took action to ensure the preservation of its own documents, yet did absolutely nothing to ensure that the VarigLog documents were preserved despite its control of the company. This further supports the conclusion that MP Global’s failure to impose a litigation hold at VarigLog was not the result of mere negligence, but arose from a gross disregard of its obligations. Therefore, my finding of gross negligence is based, not only on MP Global’s failure to initiate a litigation hold, but on a close review of the specific facts of this case (see Chin v Port Auth. of N.Y. & N.J., 685 F3d 135, 162 [2d Cir 2012] [stating that “a case-by-case approach to the failure to produce relevant evidence, at the discretion of the district court, is appropriate” (internal quotation marks omitted)]).
My determination finds support in this Court’s decision in VOOM. In that case, we found that several factors can “support a finding of gross negligence,” such as “(1) the failure to issue a written litigation hold, when appropriate; (2) the failure to identify all of the key players and to ensure that their electronic and other records are preserved; and (3) the failure to cease the deletion of e-mail” (93 AD3d at 45). The record here indicates a pattern of inaction on the part of MP Global that supports a finding of gross negligence (see id.; see also 915 Broadway Assoc. LLC v Paul, Hastings, Janofsky & Walker, LLP, 34 Misc 3d 1229[A], 2012 NY Slip Op 50285[U], *9 [Sup Ct, NY County 2012]).
Contrary to MP Global’s argument, this Court’s affirmance of the motion court’s decision will not result in parent corporations routinely being held responsible for the discovery lapses of related companies. My conclusion is based on the unique facts of this case and the significant control MP Global had over VarigLog at the time this action was commenced. Finally, other than disputing the degree of control, MP Global offers no excuse for its failure to ensure that the documents were preserved.
The fact that the companies may have had different computer systems does not undermine the conclusion that MP Global had an obligation to act. In April 2008, a Brazilian court placed MP Global in control of VarigLog’s administration and management, and the record shows that MP Global put together the *441 “team” that ran VarigLog, that the team included MP Global’s own employees and consultants and, in one instance, a partner’s sister, Ohira, who ultimately became VarigLog’s CEO. MP Global could have, at a minimum, inquired about the existence of a litigation hold at VarigLog and directed preservation of the data.
As the loss of potential evidence was the result of MP Global’s gross negligence, the relevance of the material is presumed and need not be proven by plaintiffs (VOOM, 93 AD3d at 45-46; Ahroner, 79 AD3d at 482). I note that, although the majority finds that plaintiffs can only speculate as to the relevance of VarigLog’s internal emails, “it is the peculiarity of many spoliation cases that the very destruction of the evidence diminishes the ability of the deprived party to prove relevance directly” (Sage Realty Corp. v Proskauer Rose, 275 AD2d 11, 17 [1st Dept 2000], lv dismissed 96 NY2d 937 [2001]).[2]

. Even if this Court were to use its own discretion, a standard relied on by the majority, I believe an adverse inference would be the correct sanction. I also note, as does the concurring judge, that an adverse inference is permissive and does not require that the jury draw a negative inference from the absence of evidence.

. Although the majority engages in an extended discussion of the absence of prejudice, we do not know what the missing documents would show. However, it is important to note that the categories of destroyed materials are directly relevant to the critical issue in this litigation, which is whether MP Global was an alter ego of VarigLog.